UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTWAIN SIMPSON,**<br><br>**Defendant.** | **Case No. 25-mj-00168 (GMH)** |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States respectfully submits this memorandum in support of its motion that the defendant, Antwain Simpson, be detained pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). Defendant Simpson is charged by complaint with one count of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm) for unlawfully possessing a loaded firearm on a busy street in a residential area. Simpson has eight prior convictions dating back almost three decades and this case marks Simpson's 22nd arrest. If convicted, this will be the second time that Simpson has been convicted of illegally possessing a firearm as a felon. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of the community.

For the following reasons, the Court should order defendant Simpson detained pending trial.

### FACTUAL BACKGROUND

On August 22, 2025, at approximately 11:00 p.m., members of the Metropolitan Police Department's ("MPD") Fifth District Crime Suppression Team were patrolling the 1400 block of Saratoga Avenue NE, Washington, D.C. 20018, with federal law enforcement officers. MPD

Officers Manuel Sibrian, Malik Harleston, and Frederick Onoja were in full uniform and operating a marked police vehicle while patrolling the area.

As MPD Officers Sibrian, Harleston, and Onoja were driving westbound in the 1400 block of Saratoga Avenue NE, they observed a group of individuals congregating on the sidewalk in front of 1427 Saratoga Avenue NE. Officers observed one of those individuals, who was later identified by his Maryland driver's license as Antwaine Simpson, sitting in a lawn chair holding what officers recognized as a small personal sized wine bottle. Before officers could approach Simpson, Officer Sibrian observed Simpson place the wine bottle underneath Simpson's chair. Officer Sibrian approached Simpson and observed the wine bottle underneath Simpson's chair. The wine bottle appeared to be mostly empty with a small amount of red liquid visible inside of the bottle.

Officer Sibrian also observed that Simpson was wearing a crossbody satchel. The crossbody satchel was partially unzipped and Officer Sibrian could see what appeared to be a mylar bag inside of the crossbody satchel. Officer Sibrian is aware that mylar bags are frequently used to store marijuana. Officer Sibrian told Simpson he could see that Simpson's crossbody bag was slightly open and asked Simpson how much weed he had in the bag. Simpson responded by lifting his crossbody satchel and squeezing the satchel. Officer Sibrian asked Simpson to fold up the bag, at which point Simpson further unzipped the crossbody satchel and removed a white mylar bag. Based on Officer Sibrian's training and experience, the mylar bag appeared large enough to hold more than 2 ounces of marijuana.

Officer Sibrian and Officer Harleston then approached Simpson and placed Simpson in handcuffs. After Simpson was handcuffed, Officer Sibrian conducted a protective pat down of Simpson and felt a hard object consistent with a firearm in Simpson's pants. Officer Sibrian announced the predetermined codeword for the presence of a firearm and officers recovered a firearm from inside the front waistband of Simpson's pants.



**Figure 1 – The black, 9mm, Springfield Armory Hellcat pistol bearing serial number BA648969 inside of SIMPSON'S waistband.**

The firearm officers recovered from Simpson's waistband area was a black, 9mm, Springfield Armory Hellcat pistol bearing serial number BA648969. The firearm was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity. The firearm appeared to be fully functional, designed to expel a projectile by means of an explosive action, had a barrel length of less than twelve inches, and had the ability to be fired by the use of a single hand.

**Figure 2 - The black, 9mm, Springfield Armory Hellcat pistol bearing serial number**



**BA648969 that was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity.**

After officers detained Simpson, Officer Sibrian returned to the chair where Simpson had been sitting and recovered a small personal sized Sutter Home wine bottle.  When Officer Sibrian recovered the bottle, he could smell the odor of an alcoholic beverage.



**Figure 3 (left) – Photograph of the wine bottle underneath SIMPSON'S chair.**
**Figure 4 (right) – Officer Sibrian holding the wine bottle recovered from underneath SIMPSON'S chair.**

Officers conducted a search of Simpson's crossbody bag and recovered the following items:

- 1 clear, twisted piece of plastic containing a white rock-like substance with a weight of 5.6 grams, which field-tested positive for cocaine base;

- 1 large "White Trufflez" plastic resealable "Mylar" bag containing a green-leafy substance with a weight of 57.5 grams which field-tested positive for THC;

5

- 1 black in color digital scale with green-leafy residue;

- 4 empty "Pink Marshmallow" plastic resealable "Mylar" bags containing green-leafy residue;

- 2 large black in color empty plastic resealable "Mylar" bags containing green-leafy residue;

- 13 clear sandwich bags containing green-leafy residue; and

- 1 multi color grinder containing green-leafy residue.

Officers also recovered ten dollars in U.S. currency from Simpson's right pants pocket.



**Figure 5 (left): White mylar bag recovered from SIMPSON'S crossbody satchel.
Figure 6 (right): Interior of white mylar bag recovered from SIMPSON'S crossbody satchel containing green leafy substance.**



**Figure 7 – Photograph of SIMPSON'S crossbody satchel, items recovered from the crossbody satchel, and currency recovered from SIMPSON'S right pants pocket.**

Officers determined that Simpson had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. Simpson was previously convicted in 2021 of

7

Assault with Significant Bodily Injury in D.C. Superior Court Case Number 2021 CMD 000704 and sentenced to 24 months incarceration. Simpson was also previously convicted in 2009 of Possession of a Firearm after a Felony Conviction and Carrying a Handgun in the Circuit Court for Prince George's County Case Number CT081741X. On the charge of Possession of a Firearm after a Felony Conviction, Simpson was sentenced to 5 years incarceration, with 1,285 days suspended. On the charge of Carrying a Handgun, Simpson was sentenced to 3 years incarceration, with 555 days suspended. Accordingly, Simpson would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was found in possession of the firearm and ammunition.

On August 24, 2025, the Court approved a criminal complaint charging Simpson with one count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). On August 26, 2025, at the defendant's initial appearance, the government orally moved for detention pending trial pursuant to the above-referenced provision of the federal bail statute. A detention hearing is set for August 27, 2025.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the

government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review and understanding of the facts and circumstances in this case demonstrates that there are no conditions or combination of conditions that would ensure the safety of the community should the defendant be released. The Court should detain the defendant pending trial.

### 1. The United States' Bases for Detention

The United States seeks detention pursuant to § 3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm) after having been previously convicted of Assault with Significant Bodily Injury in D.C. Superior Court Case Number 2021 CMD 000704 and Carrying a Dangerous Weapon–Gun and Possession of a Firearm After Convicted of a Felony in the Circuit Court of Prince George's County, Maryland, case number CT081741X.

18 U.S.C. § 3142(g) sets forth four factors that the court considers in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be

posed by his release. Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

### A.     The Nature and Circumstances of the Offense Weighs in Favor of Detention

The nature of the defendant's conduct is serious and weighs heavily in favor of pretrial detention in this case. The defendant is charged with possessing a loaded semi-automatic handgun under § 922(g)(1)—a serious crime carrying up to 15 years in prison under § 924(a)(8).

At approximately 11:00 p.m. on August 22, 2025, MPD officers were patrolling the 1400 block of Saratoga Avenue NE, when they observed a group of individuals congregating on the sidewalk in front of 1427 Saratoga Avenue NE.  Officers observed that Simpson, who was seated in a chair among the group of individuals on the sidewalk, was holding a small personal sized wine bottle.  Before an officer could approach Simpson, Simpson placed the bottle of wine under his chair.  When officers searched Simpson after detaining him for possessing an open container of alcohol, officers found a loaded 9mm Springfield Armory Hellcat pistol in Simpson's front waistband.  The firearm was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity.  The 1400 block of Saratoga Avenue NE is located in the heart of a residential neighborhood and Simpson possessed this loaded firearm, in an easily accessible area on his person, while he was seated outside among a group of other individuals, demonstrating the danger Simpson's conduct posed to the community.  Accordingly, the nature and circumstances of this offense weighs heavily in favor of detention.

While the defendant is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023

WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). This Court routinely finds that possession of just one gun poses a danger to the community. *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public). Here, where the firearm recovered from Simpson was loaded and had a round chambered, the defendant should be detained pending trial. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling").

**B.     The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1]  The Government's case against defendant Simpson is strong.

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Here, during a search incident to arrest, officers recovered a loaded firearm from the defendant's waistband. Accordingly, there is no question that the defendant possessed the firearm that he is alleged to have unlawfully possessed on August 22, 2025. *See* Figure 1, *supra*. "[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and Simpson should be detained pretrial.

### C.    The Defendant's History and Characteristics Weigh in Favor of Detention

The third factor—the history and characteristics of the defendant—heavily favors detention. Over the past 27 years, Simpson has been convicted 8 times and arrested 21 times. Simpson's most recent conviction was for assaulting another individual with so much force that he broke their jaw. And Simpson has previously been convicted of being felon in possession of a firearm.

In addition to the concerning information listed on page 6 of Simpson's Pre-Trial Services Report, Simpson's first adult conviction was in 1998 for the Unlawful Taking of a Motor Vehicle for which he was sentenced 1,800 days of confinement, 1,766 days suspended and 2 years of supervised probation. In 1999 Simpson was convicted of Second-Degree Assault for which he was sentenced to 2 months of incarceration.

In 2002 Simpson was convicted of Possession with Intent to Distribute a Controlled Substance–Cocaine. Simpson was initially given a fully suspended sentence and placed on two years of supervised probation. In 2003, Simpson's probation was revoked and a new term of 2

years of supervised probation was imposed. In 2004, Simpson's probation was revoked and he was sentenced to three years of incarceration and five years of supervised release. Following his release from incarceration, Simpson was initially compliant but in February 2006 he began testing positive for illegal substances, failed to report to supervision, and failed to comply with imposed sanctions. In June 2007 Simpson's supervised release was revoked and he was ordered to serve eight months of incarceration and an additional 52 months of supervised release. In January 2008 Simpson was released back into the community but continued to use illegal controlled substances and failed to comply with supervision instruction. In March 2009, following a revocation hearing, the defendant was recommended for participation in a residential treatment program at the D.C. Jail. Simpson was subsequently rearrested on two more occasions and continued to use illegal substance, which resulted in his term of supervised release being revoked in June 2012. Simpson was then sentenced to ten months imprisonment and 36 months of supervised release. At the time of Simpson's arrest for Assault with Significant Bodily Injury he was still on supervised release for his 2002 conviction for Possession with Intent to Distribute a Controlled Substance–Cocaine.

In 2008 Simpson was convicted of Carrying a Dangerous Weapon–Gun and Possession of a Firearm After being Convicted of a Felony. On the charge of carrying a dangerous weapon, Simpson was sentenced to three years in jail with all but 18 months suspended and three years of supervised probation. On the charge of possession of a firearm after being convicted of a felony, Simpson was sentenced to five years of incarceration, concurrent with the sentence on the other charge, with all but 18 months suspended and 3 years of supervised probation. Simpson's probation was terminated unsatisfactorily in September of 2013.

In 2011 Simpson was convicted of two counts of misdemeanor Possession of a Controlled

13

Substance for possessing ecstasy and marijuana for which he was sentenced to time served. In 2014 Simpson was convicted of Attempted Tampering with a Detection Device for which he was sentenced to a fully suspended sentence of 180 days and 12 months of probation. In the case from which that conviction arose, Simpson was acquitted of assaulting a police officer. Specifically, Simpson was alleged to have interfered in an arrest and attempted to flee from police with a backpack belonging to the individual police were trying to arrest. When officers pursued Simpson, officers alleged that Simpson removed a wooden handled dagger from a sheath in his waistband and threw the dagger at them. After officers detained Simpson, they found a loaded handgun and illegal narcotics in the backpack Simpson took when he fled from police.

In 2019 Simpson was convicted of Driving a Motor Vehicle Without a License for which he was sentenced to a fully suspended sentence of 60 days. And in 2021 Simpson was convicted of Assault with Significant Bodily Injury for which he was sentenced to 24 months incarceration, suspended in favor of 24 months of probation. In that case, Simpson was involved in an altercation with another individual during which he punched that individual in the right side of their face, breaking their jaw and causing the individual to be hospitalized. The defendant remained on supervision in that case until February 14, 2024.

In sum, this factor weighs heavily in favor of detention.

### D. The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention

The fourth and final factor, danger to any person or the community posed by defendant Simpson's release, similarly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy,

quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Defendant Simpson's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). And here, Simpson possessed a firearm while on a busy street in a residential neighborhood while he appeared to be drinking alcohol.

Moreover, the defendant poses an obvious and articulable threat to the community as evidenced by his recidivism. The defendant has been previously convicted of a nearly identical offense stemming from his illegal possession of a firearm due to his status as a felon. And in 2021 the defendant was convicted of Assault with Significant Bodily Injury for breaking the jaw of another individual during a fight at a 7-eleven. The defendant's decision to once again arm himself with a loaded firearm demonstrates that he continues to pose a danger to the community.

This factor, along with the other three factors, weighs in favor of the defendant's detention without bond pending trial to ensure the safety of the community.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain defendant Simpson pending trial on these charges.

                                              Respectfully submitted,

                                              JEANINE FERRIS PIRRO
                                              UNITED STATES ATTORNEY

                                  By:  /s/ *Benjamin Helfand*
                                              BENJAMIN HELFAND
                                              Assistant United States Attorney
                                              D.C. Bar No. 1658708
                                              601 D Street, N.W.
                                              Washington, D.C. 20530
                                              Telephone: 202-252-7059
                                              Email: Benjamin.Helfand@usdoj.gov