## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 25-cr-261-RBW** |
| | : | |
| **ANTWAIN SIMPSON** | : | |
| | : | |
| **Defendant.** | : | |

## APPEAL FROM ORDER OF DETENTION AND REQUEST FOR HEARING

Defendant Antwain Simpson ("Mr. Simpson"), by and through his attorneys, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Appeal from Order of Detention and Request for Hearing. In support of this Appeal, counsel states the following.

### Introduction

Antwain Simpson is a 45-year-old lifelong resident of the D.C. metropolitan area. He is a father of three, including two minor children. He has abundant family support from his significant other and his mother. For three years, he had been employed at the District of Columbia Department of Public Works.[1] On August 22, 2025, Mr. Simpson was arrested by MPD officers and federal law enforcement personnel who descended upon the 1400 block of Saratoga Avenue, Northeast as

---

[1] Mr. Simpson lost his job after his arrest in this case.

part of the already infamous Make DC Safe and Beautiful operation. As captured on body-worn camera footage, in the span of under an hour, law enforcement personnel committed a staggering number of Fourth Amendment violations, including the unlawful warrantless arrest of Mr. Simpson.

On August 23, 2025, the Government filed charges against Mr. Simpson in Superior Court. *See United States v. Simpson*, No. 2025-CF2-010014. That same day, Mr. Simpson made his first appearance, at which time he was ordered held pending a preliminary hearing that was scheduled for August 26, 2025. However, on August 24, 2025, the Government obtained a Criminal Complaint in this Court charging Mr. Simpson with one count of possession of a firearm and ammunition by a person previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). On August 26, 2025, the Superior Court charges were dismissed in favor of federal prosecution. That same day, Mr. Simpson made his initial appearance in this Court. The Government announced its intent to seek Mr. Simpson's detention. The Court scheduled a detention hearing for August 27, 2025. On the evening of August 26, 2025, the Government filed its detention memorandum. (ECF No. 6.) On August 27, 2025, the parties appeared before Judge Harvey for a detention hearing. At the conclusion of the hearing, Judge Harvey ordered Mr. Simpson detained on the basis of danger to the community. (ECF No. 10.)

On September 2, 2025, the Government filed a one-count Indictment charging Mr. Simpson with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 11.) A status conference is scheduled for October 22, 2025.

In its detention memorandum, the Government ignored evidence showing that officers acted in an unreasonable and unconstitutional manner in arresting Mr. Simpson, evidence that threatens the viability of this case. The law presumes that Mr. Simpson should be released. The Government has offered no argument that Mr. Simpson poses any risk of flight. And the Government failed to meet its burden to prove by clear and convincing evidence that Mr. Simpson's release would pose any danger to the community, let alone danger to such a degree that the Court should decline to set conditions of release. For the reasons set forth below and those that will be presented at a hearing, Mr. Simpson submits that this Court should revoke the Order of Detention and set appropriate conditions of pretrial release in this case.

## ARGUMENT

"If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). "A motion under 18 U.S.C. § 3145(b) for review of a magistrate judge's detention order requires the Court promptly to examine *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community." *United States v. Sheffield,* 799 F.Supp.2d 18, 19-20 (D.D.C. 2011). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Id.* at 20 (quoting *United States v. Hanson,* 613 F.Supp.2d 85, 88 (D.D.C. 2009)).

The law presumes that a person facing federal criminal charges should be released pending trial. *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.). Indeed, "[t]he default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (Moss, J.) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

4

The Bail Reform Act of 1984 mandates that pretrial detention is permissible only where:

> After a hearing pursuant to the provision of 18 U.S.C. § 3142(f) the judicial officer finds that *no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community.

18 U.S.C. § 3142(e) (emphasis added). "To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (citing 18 U.S.C. § 3142(f)). "[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a preponderance of the evidence" *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (citation omitted). In evaluating whether the Government has met its burden, courts consider the factors found at 18 U.S.C. § 3142(g), which include: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."

The Bail Reform Act ultimately commands that district courts impose the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any

other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B). Notably, this is *not* a case in which the law imposes a presumption of detention.

The Government has failed to proffer clear and convincing evidence of Mr. Simpson's danger to the community. The Government has made no argument whatsoever that Mr. Simpson poses a risk of flight. Simply put, the Government will not be able to meet its burden to show that there is no condition or combination of release conditions that can reasonably assure Mr. Simpson's presence in court as required and the safety of the community. Mr. Simpson respectfully submits that releasing him on GPS monitoring with home detention will adequately assure the safety of the community and his presence in court as this case progresses.

### The Nature and Circumstances of the Alleged Offenses and Weight of the Government's Proffer Pose No Barrier to Imposing Reasonable Conditions of Pretrial Release

The Government has charged Mr. Simpson with a single count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). As noted above, this charge *does not* carry a presumption of detention. Under the Constitution and the Bail Reform Act, there is a presumption in favor of release. There is no allegation that Mr. Simpson used a firearm to threaten or harm another individual. Nor is there any allegation that officers responded to the scene for a report of shots fired. To the contrary, federal and local law enforcement officers

swarmed the area of Saratoga Avenue, Northeast as part of an ongoing campaign to render the District of Columbia a police state. The nonviolent allegations in this case do not support detention.

Both the Affidavit in support of the Criminal Complaint and the Government's detention memorandum present an incomplete recitation of the circumstances that resulted in the charge at issue. Mr. Simpson therefore provides additional background information.

At approximately 21:59:43 on August 22, 2025, MPD Officer Malik Harrleston got into an MPD cruiser in which MPD Officer Manuel Sibrian Duarte was seated in the driver's seat.



Officer Sibrian drove for a distance and came to a stop in the 1400 block of Saratoga Avenue, Northeast at approximately 22:01:45. Officers Sibrian and Harrleston then got out of the cruiser. As seen in Officer Sibrian's body-worn camera

footage, there were already many law enforcement officers, including federal law enforcement officers, roaming the residential street.



    Officer Sibrian then turned his attention to a group of men who were congregated on a nearby sidewalk and began shining his flashlight.



Meanwhile, Officer Harrleston walked in opposite direction.[2]

Officer Sibrian approached the area where the men were gathered and shined his flashlight on Mr. Simpson, who was seated in a lawn chair.



Officer Sibrian then stood on the curb next to the men as a federal law enforcement officer, with whom Officer Sibrian had not spoken, approached from the other side of the street.

---

[2] Officer Harrleston did not approach the sidewalk where Officer Sibrian stood and Mr. Simpson sat until approximately 22:03:36.



Officer Sibrian repeatedly shined his flashlight at Mr. Simpson.



As the federal officer stood directly next to Mr. Simpson, Officer Sibrian stepped closer towards then men and continued to shine his flashlight at Mr. Simpson.



After standing there for some additional time, Officer Sibrian decided to take a photograph of a man innocently standing by.



As that man walked away, Officer Sibrian then took a photograph of Mr. Simpson.



One of the other men asked Officer Sibrian why he was taking pictures. Officer Sibrian pretended not to hear and went back to shining his flashlight at Mr. Simpson.



Officer Harrleston, for the first time, then approached the area where Officer Sibrian had been watching the group of men. Officer Sibrian then asked Mr. Simpson: "How much weed do you have in that bag? I see it's slightly open right there, you see? How much weed do you have?" Mr. Simpson then grabbed his cross-body bag and responded: "Not a lot."



Officer Sibrian then noted that the bag he suspected contained marijuana was folded up. Mr. Simpson then removed a bag from his cross-body bag, unfolded it, and placed it back into the cross-body bag. With any lawful basis, Officers Sibrian and Harrleston, joined by federal officers, then arrested Mr. Simpson by immediately handcuffing him.[3] Officer Harrleston patted down Mr. Simpson's waistband area.

---

[3] Notwithstanding the fact that Officer Sibrian told Mr. Simpson that he was not under arrest and was merely being detained, the Government has conceded that

Officer Harrleston then searched Mr. Simpson's cross-body bag while it was still positioned on Mr. Simpson's body. Next, Officer Sibrian searched the waistband of Mr. Simpson's pants. In doing so, Officer Sibrian grabbed Mr. Simpson's genitals.



The officers moved Mr. Simpson to the street and recovered a firearm. But those were not the only constitutional violations in which the members of this operation engaged.

Approximately one minute after Mr. Simpson's arrest, an officer approached a man who was innocently walking down the street. The officer shined his flashlight at the man and asked whether the man had anything on him. Resigned to the inevitability of the forthcoming constitutional violation, the man shrugged and lifted

---

Mr. Simpson was in fact placed under arrest. *See* Gov. Detention Memorandum, ECF No. 6 at 12 (describing the search of Mr. Simpson's waistband area as a "search incident to arrest").

his sweatshirt from his body, stating: "Go ahead. It don't even matter." The officer directed the flashlight at the man's midsection. The officer then manually searched the man's waistband area and felt his pockets. The man then went about his business.[4]



Several minutes later, officers in the same squad approached a different man who was innocently sitting by a fence. The officers asked whether the man had anything on him. The man confirmed that he did not have a gun. Without any legal basis, an officer then asked the man to show his waistband area. The man did so. The officers then directed the man to remove the items from the front pocket of his sweatshirt. The man removed his phone and wallet. The officers then asked the man

---

[4] At approximately 22:26:20, Officer Sibrian encountered this same man as the man stood among a group on a sidewalk. Officer Sibrian shined his flashlight in a strobe light-like fashion in the man's face.

to stand. The man hesitated. An officer directed the man to stand. Officers manually searched his waistband area, indicated there was no problem with the man having marijuana, and then moved on.



Unfortunately, the officers engaged in still more constitutional violations. After arresting Mr. Simpson, officers seized his car keys from his person. The officers determined to find the car. After pressing a button on a key, the officers heard a car horn and then made their way to Mr. Simpson's car, which was not located immediately near the arrest site. At 22:15:00, an officer opened the door of Mr. Simpson's car.[5] The officers did not obtain a warrant to search the car. As far as Mr. Simpson is aware, no canine alerted to the car. The materials provided in

_____

[5] The engine was not running. There was no one inside of the car.

discovery contain no allegation that officers saw Mr. Simpson at or near the car on the night in question. Nonetheless, the officers proceeded to search the car.



At least one federal agent appeared to carry professional-quality film equipment.[6]



---

[6] Mr. Simpson requests that the Government produce this footage in discovery.

As to the second § 3142(g) factor, courts have recognized that "the weight of the evidence is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Additionally, courts "have cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness." *United States v. Taylor*, No. 1:21-cr-392-RCL-2, 2021 U.S. Dist. LEXIS 150500, at *14 (D.D.C. Aug. 11, 2021) (internal quotation and citation omitted). Furthermore, Congress has mandated that no provision of the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As best the undersigned can discern, the Government's argument on this factor rests almost entirely upon its evaluation of the strength of its case for guilt, *not* dangerousness. The Government's arguments fail under scrutiny. There is no evidence that Mr. Simpson acted in a violent manner in this case. He did not assault officers. The Government's speculation about what *might* occur in some *theoretical* case when a person possesses a firearm is insufficient to support detention. Moreover, as a result of the constitutional violations that will be addressed in a motion to suppress, the weight of the Government's admissible evidence is weak.

Given all of these considerations, the weight of the evidence in this case fails to establish dangerousness and instead favors release.

**Mr. Simpson's History and Characteristics Demonstrate That His Release Pending Trial Would Not Pose a Danger to the Community**

Antwain Simpson is 45 years old. He is a lifelong resident of the District of Columbia metropolitan area. He has a GED. Mr. Simpson lives in a home with his significant other, Ms. Vaughan, and their two minor children. Mr. Simpson has an adult daughter from a prior relationship. Before his arrest, Mr. Simpson worked in sanitation for the District of Columbia Department of Public Works. Mr. Simpson is also very close with his mother.

At the previous detention proceedings, the Government relied heavily on Mr. Simpson's criminal history to support its request for detention. As an initial matter, much of Mr. Simpson's criminal history is so dated as to have little probative value for the detention inquiry. Though Mr. Simpson does come before the Court with prior convictions, his recent history demonstrates that this Court can and should set appropriate conditions of release. In 2021-CMD-000704, Mr. Simpson waived his right to indictment and pled guilty to an information charging him with assault with significant bodily injury. The incident giving rise to that case occurred in December 2020. On the date at issue, a man accosted Mr. Simpson outside of a convenience store. Mr. Simpson punched the man, who sustained injuries to his jaw. The conduct did not involve the use of a firearm. Mr. Simpson was ordered released on conditions. Mr. Simpson complied with his conditions of release. He received a fully

suspended sentence and successfully completed two years of probation. Mr. Simpson was not on probation at the time of his arrest in August 2025.

In 2019, Mr. Simpson received a fully suspended sentence in a traffic matter. In September 2014, now more than 10 years ago, Mr. Simpson was charged with offenses including assaulting a police officer in Superior Court case number 2014-CF2-015921. Mr. Simpson was released pending trial. The matter proceeded to a jury trial on March 9, 2015. On March 12, 2015, the trial court granted in part Mr. Simpson's motion for judgment of acquittal. On March 18, 2025, the jury rendered verdicts of acquittal as to all but one of the remaining counts. Count Four, with respect to which the jury was unable to reach a verdict, charged Mr. Simpson with tampering with physical evidence. Mr. Simpson remained on conditions of release after the trial. On April 28, 2015, Mr. Simpson pled guilty to an amended charge of attempted tampering with a detection device. Mr. Simpson remained on conditions of release. On July 27, 2015, Mr. Simpson was sentenced to a fully suspended term of 180 days of incarceration and placed on one year of probation. Mr. Simpson successfully completed this term of probation.

In 2011-CMD-010879, Mr. Simpson was charged with misdemeanor drug possession. He was ordered released pending trial. While it appears that the court issued a bench warrant on one occasion, the warrant was later quashed because Mr. Simpson had not willfully failed to appear – he was detained in another matter at the

time the warrant was issued. Mr. Simpson was again ordered released on conditions. On June 13, 2012, he pled guilty to two counts misdemeanor drug possession and was sentenced to time served. Mr. Simpson's recent history demonstrates that he complies with court orders. He appears for court as required. He performs well on conditions of release. Mr. Simpson's only conviction for conduct involving the possession of a firearm dates back more than 17 years. Mr. Simpson's family and community ties, employment history, and successful performance on conditions of release demonstrate that he should not be detained in this matter.

As for the final § 3142(g) factor, the Government bears the burden of proving by clear and convincing evidence that Mr. Simpson "presents an identified and articulable threat to an individual or the community[.]" *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021); *see also Taylor*, 2021 U.S. Dist. LEXIS 150500, at *21 (noting that a district court must make a "forward-looking determination in its dangerousness assessment") (internal quotation and citation omitted). The Government has failed to identify any specific, non-speculative threat Mr. Simpson poses to the community. Given Mr. Simpson's recent history and personal characteristics and the lack of any evidence that he poses any identified or articulable threat of danger, this Court should set conditions of release.

**Conditions of Pretrial Release Will Assure Mr. Simpson's Appearance and the Safety of the Community**

If released, Mr. Simpson will live with his significant other Shawn Vaughan and their two minor children. Counsel understands that Ms. Vaughan's mother will also be present in the home. Ms. Vaughan was previously screened by PSA and deemed eligible to serve as a third-party custodian. Because of Ms. Vaughan's work schedule, PSA previously deferred to the Court with respect to Mr. Simpson's release plan. However, given that Ms. Vaughan's mother will also be present, Mr. Simpson submits that release to the third-party custody of Ms. Vaughan, with conditions of GPS monitoring and home detention, will reasonably assure the safety of the community and Mr. Simpson's presence in court.

## **CONCLUSION**

The Government has come forward with no evidence that Mr. Simpson's release presents a threat of danger to any person or the community. The law presumes that Mr. Simpson should be released. Mr. Simpson has proposed release conditions that amply satisfy the purposes of the Bail Reform Act. This Court should therefore revoke the Order of Detention and order Mr. Simpson released pending trial.

Respectfully submitted,

S/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland  20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I hereby certify that on this day, October 21, 2025, a copy of the foregoing

was electronically filed and sent via ECF to the United States Attorney's Office for

the District of Columbia.

s/_____
Michael E. Lawlor