## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-00261 (RBW)** |
| | : | |
| **ANTWAIN SIMPSON** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## MOTION TO SUPPRESS TANGIBLE EVIDENCE

COMES NOW, the Defendant, Mr. Antwain Simpson, by and through his undersigned counsel, Brian K. McDaniel, requesting that this court suppress the tangible evidence recovered in this matter as a result of the unconstitutional stop and seizure of the defendant. In support of this request the Defendant proffers the following:

**I.      Facts.[1]**

It is alleged that on Friday August 22, 2025, at approximately 10:24 pm officers from a multi-agency task force titled the "Make DC Safe and Beautiful initiative" were patrolling the area of the 1400 block of Saratoga Ave. in Northeast Washington D.C.. While citizens were doing nothing more than enjoying a warm summer evening, the task force descended upon the community and alighted from several law enforcement vehicles and began to harass and otherwise accost the citizens who they encountered in the block. MPD officers M. Sibrian (Driver) and M. Harleston (Front Passenger) were occupying a law enforcement vehicle in the same unit block when they alighted from their vehicle and began their interaction with Mr. Simpson who was sitting in a lawn chair on the sidewalk when the officers approached. In the Statement of Facts attending

---

[1] The defendant by no means adopts as true the version of events provided by Officer Harleston concerning the initial approach/"stop" and contained in the officer's factual proffer.

the Arrest Report drafted by officer Harleston, the officers proffered the following in an attempt to

justify the search and arrest of Mr. Simpson:

> "At approximately 22:24 hours, Officers were traveling westbound in the 1400 block of Saratoga
> Ave NE when they observed a group of individuals congregating on the south sidewalk in front of
> 1427 Saratoga Ave. NE. Officers observed a male, later identified as Antwain Simpson, a black male
> with a date of birth of 07-18-1980, who was identified on scene by his Maryland driver's license
> (who will now be referred to as Defendant Simpson) sitting in a lawn chair in possession of what
> officers recognized to be a small personal Sutter Homes wine bottle. Officers exited their police
> cruiser to investigate further.
> Upon approaching Defendant Simpson, Officer Sibrian clearly observed Defendant Simpson in
> possession of a small "Sweet Red" Sutter Homes wine bottle. The small wine bottle was nearly
> empty, with a small amount of red liquid visible inside. Upon retrieving the wine bottle, Officer
> Sibrian detected the smell of an alcoholic beverage emanating from it. Defendant Simpson was
> handcuffed and placed under arrest for Possession of an Open Container of Alcohol."

This post arrest attempt at justifying the illegal search of Mr. Simpson is revealed as pretext

after a review of the Body Worn Camera Footage of both Officers Sibrian and Harleston. (Please

see exhibits 1 and 2, the BWC footage for both officers which will be provided to the court by

external thumb drive). Officer Sibrian's body worn camera does not show any frame wherein Mr.

Simpson can be seen to have possessed or drank from any wine bottle. Neither does the BWC for

Officer Harleston. More importantly, the fashion in which the officers initially engage with Mr.

Simpson circumstantially supports a finding that they never saw Mr. Simpson drinking from any

bottle at all. Instead of as it is suggested in the police report (that the officers got out of their vehicle

because they saw Mr. Simpson with the wine bottle) officer Sibrian and Harleston appear to go in

two different directions when they get out of the car. Officer Sibrian is the first officer to arrive at

the area near where Mr. Simpson is seen to be sitting in the lawn chair looking at his phone. Officer

Sibrian does not approach Mr. Simpson and immediately arrest him for drinking the wine bottle in

public, instead he stands around in the area shining a flashlight on Mr. Simpson and other citizens

and begins to take pictures of them for no readily apparent reason. (See Exhibit 1 at time stamp

2:00-3:45). Seconds into his interaction with Mr. Simpson, Officer Sibrian asks Mr. Simpson "how

much weed do you have in your pouch" referring to a small, over the shoulder bag which Mr.

Simpson was wearing.  Mr. Simpson responds by saying "not much". As the amount of marijuana, he was in possession of was under the legal limit for possession of the same in the District of Columbia, Mr. Simpson took the marijuana out of the pouch and showed it to the officer.[2] It is thereafter that the officers ask Mr. Simpson to stand up as they place him under arrest before the pat down search which resulted in the recovery of the firearm at issue in this case. The absence of any mention of the legal possession of marijuana, which appears to be the actual reason the officers placed Mr. Simpson under arrest, reveals their pretextual reliance upon the consuming of alcohol as a sheer post hoc effort to justify the warrantless search of Mr. Simpson. Testimony in a motions hearing, and the review of the BWC for the officers on scene will show that the officers' actions upon arrival evidence that they did not see Mr. Simpson drinking the wine bottle in public and that the articulable suspicion and/or probable cause necessary for the search of Mr. Simpson did not exist.

## II.    The Interaction Between Officers and Mr. Simpson Was A Seizure.

For the majority of cases, police citizen encounters can be classified as one of four types of intrusions, each of which requires its own level of justification:

1. A contact, which involves minimal restriction on liberty, does not implicate the 4th Amendment and requires no justification.
2. A stop which is a seizure under the 4th Amendment and is justified only if the police have a reasonable articulable suspicion to believe that the person has or is engaged in a criminal activity.
3. A frisk which must be preceded by a lawful stop and is justified only if  the police have a reason to believe the person is armed and dangerous.
4. An arrest, which is justified only if the police have probable cause to believe the person has committed or is committing a crime.

*Dunaway v. New York*, 442 U.S. 200, 213 (1979).

---

[2] Tellingly, the exchange between Officer Sibrian and Mr. Simpson regarding the marijuana is absent from the report offered in support of the arrest by the officers.

Whether a citizen is free to walk away [after initial contact with law enforcement] is judged by "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." *United States v. McKethan*, 247 F.Supp. 324, 328 (D.D.C. 1965). In the present case, Mr. Simpson was approached by Officers Sibrian and Harleston who stood in front of him in full police uniform as he sat, with a gate behind him, in a chair on the sidewalk. Mr. Simpson could not leave the place where he was seated as the officers physically blocked any pathway that Mr. Simpson might have employed to leave the area and the presence of the Officers. This initial interaction as described by the officers and depicted on their BWC was a constitutionally protected seizure for which no articulable suspicion existed.

If a person is under [the] reasonable impression that he/she is not free to leave the officer's presence, a "stop", in contrast to a "contact" has occurred. For example, the Washington, D.C., MPD General orders, Series 304, No. 10 (Police Citizen Contacts, Stops, Frisks, July 1, 1973) states said rule/guiding principle. After the Officers stopped Mr. Simpson and directed him to stand up, even in the face of the protestation of Mr. Simpson, this interaction moved from a "contact" (a permissible interaction between police and citizen, to a "stop" (a seizure of persons, implicating the Fourth Amendment). *Terry v. Ohio*. 392 U.S. 1, 19 (1968).

### III.    *Officers Did not Have The requisite Articulable Suspicion to Stop Mr. Simpson.*

Before conducting a frisk, the police must have adequate justification for a *Terry* Stop. *Adams v. Williams*, 407 U.S. 143, 146 (1972). The frisk must be independently justified, and the sole justification for a frisk is protection. *Mayes v. United States*, 653 A.2d 856, 861 (D.C. 1995). Furthermore, the scope of the intrusion is significantly limited. *Id*. To justify a brief investigatory stop under *Terry*, an Officer must point to specific articulable facts that gave rise to a reasonable suspicion that the suspect was engaged in criminal activity. *Terry*, 392 U.S. at 20-21. To determine

whether reasonable suspicion existed at the time of the encounter, courts use a "totality of the circumstances test. *U.S. v. Mendenhall*, 446 U.S. 544. (1980).

Here the identified Officers neither had an adequate justification for stopping Mr. Simpson or questioning him for either his own protection or the protection of others. Officers here attempt to rely upon an assertion that Mr. Simpson was drinking a wine bottle in public to support the stop. Nothing about the officer's interaction with Mr. Simpson suggests that they actually saw Mr. Simpson drinking the bottle. Instead, the objective evidence provided by the BWC footage supports the contention that the officers used the presence of an empty bottle under the seat upon which Mr. Simpson was seated as a post hoc, pretextual justification for the unconstitutional stop. A generalized fear of criminal activity and the presence of a suspect in a high crime neighborhood are factors that, standing alone, do not justify seizure. Courts may use these factors, however, in assessing the totality of circumstance surrounding a seizure. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In determining whether an officer had reasonable suspicion to initiate an investigatory stop, "we assess the relevant facts known to the authorities and decide whether those facts, from the stand point of an objectively reasonable police officer," give rise to reasonable suspicion or probable cause. See, U.S. v. Crittendon, 883 F.2d 326 (4th Cir. 1989) quoting *Terry*, 392 U.S. at 27.

This court should not credit the representations of the officers regarding their basis for the stop of Mr. Simpson. In fact, should this court find that the credibility of the Officers is undercut by the objective footage captured on the BWC footage, this court can make a finding that articulable suspicion and probable cause is not supported, and having made such a finding, suppress the evidence. In *United States v. Dashawn Andrews*, the court found that the observations which were claimed by the officers were likely untrue as the circumstances of the purported observations, and the actions of the officer when arriving on the scene, suggested that the officers

acted inconsistently with having actually viewed the suspicious activity upon which they relied. *U.S. v. Andrews*, 2022 WL 2301987 (U.S.D.C. E.D. NY 2022). In *Andrews*, officers stopped the Defendant alleging that they were able to see a "bulge" in his waistband that they believed to be a firearm. The court reviewed photos from the scene and body worn camera footage that revealed that the actions of the officers were inconsistent with what a reasonable officer would have done had they actually seen a bulge in a suspect's waistband. Because of these inconsistencies, the court made an adverse credibility finding related to the testimony of the officers and granted Andrew's motion to suppress.

The Ninth Circuit held in *U.S. v. Turvin*, that "a hunch while it might reflect good police intuition, does not amount to reasonable suspicion. Likewise, an inchoate or unparticularized suspicion or hunch cannot withstand scrutiny under the Fourth Amendment." *U.S. v. Turvin*, 517 F.3d 1097 (2007). Many factors have been approved as properly contributing to a reasonable suspicion determination:

1. Informant tips and information
2. Observations by law enforcement of what appears to be criminal conduct based on experience
3. Presence in a high crime area
4. Lateness of the hour
5. Evasive conduct
6. Furtive behavior

In *U.S. v. Foster*, the court held that "the stop of Foster by the Detective was not supported by articulable facts sufficient to provide a reasonable suspicion." Thus, the Fourth Circuit found that the District court erred in denying the defendant's Motion to Suppress Evidence seized as a result of the stop. *U.S. v. Foster*, 634 F.3d 243 (4th Cir. 2010). *In Re*. TTC, 583 A.2d 986, 990 (D.C. Cir. 1990) (No reasonable suspicion where officer "saw one man pass another man a small white

object on a corner known for drug trafficking, since object may have been a number of things besides drugs."

In the present case, the court is called upon to make a determination whether "reasonable suspicion" existed at the time Officers made the stop and seizure of Mr. Simpson. Counsel believes that the evidence viewed objectively will support a finding that the totality of the circumstances support a finding that Officers acted unreasonably when stopping Mr. Simpson; and that further the Officers lacked the requisite reasonable suspicion to stop the defendant and that it is reasonable for this court to find, in the interest of justice, that law enforcement acted in contravention of the Fourth Amendment application under *Terry v. Ohio*.

**WHEREFORE**, counsel requests that this court suppress the tangible evidence recovered in this matter.

Respectfully Submitted,

/s/Brian K. McDaniel
Brian K. McDaniel, Esq.
The Cochran Firm, CDCRS
1001 L. Street S.E.
Washington, D.C. 20036
Telephone (202) 331 – 0793
bkmassociates@aol.com
*Counsel for Mr. Simpson*


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December, 2025, a copy of the foregoing Motion to Suppress Tangible Evidence has been served upon all interested parties by ECF filing.


/s/Brian K. McDaniel
Brian K. McDaniel, Esq.